AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

**LODGED**
CLERK, U.S. DISTRICT COURT

3/4/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____KM_____ DEPTUTY

**FILED**
CLERK, U.S. DISTRICT COURT

March 4, 2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ch_____ DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No.   2:26-mj-01231-DUTY |
| CESAR CANIS-PERNILLO, | |
| Defendant. | |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Ivan Anguiano, the complainant in this case, state that the following is true to the best of my knowledge and belief.  On or about the date of November 21, 2024, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the United States Following Deportation |

This criminal complaint is based on these facts:
**_Please see attached affidavit._**
☒ Continued on the attached sheet.

/s/
_Complainant's signature_

Ivan Anguiano, Special Agent
_Printed name and title_

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    3/4/2026

_Judge's signature_

City and state:   Los Angeles, California

Hon. Brianna Fuller Mircheff, U.S. Magistrate Judge
_Printed name and title_

AUSA:  Nicholas Purcell (213-894-3752)

## AFFIDAVIT

I, Ivan R. Anguiano, being duly sworn, declare and state as follows:

### I.  PURPOSE OF AFFIDAVIT

1.   This affidavit is made in support of a criminal complaint against and arrest warrant for Cesar Canis-Pernillo, also known as "Cesar Canis" and "Cesar Rolando Canis-Fernillo" ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### II. BACKGROUND OF SPECIAL AGENT IVAN R. ANGUIANO

3.   I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), assigned to HSI Los Angeles, and have been so employed since May 2025. I am currently assigned to the HSI Los Angeles' Integrated Operations Group ("IOG") in Los Angeles, California.  The IOG is responsible for conducting investigations into federal violators of both immigration and customs laws.  I am authorized by Title 8, United States Code,

Section 1357, and Title 19, United States Code, Section 1589a, to investigate immigration law and customs law violations, respectively.

4.    Prior to my employment with HSI, I was a special agent with U.S. Department of Labor – Office of Inspector General ("DOL-OIG"), where I authored, swore out, and executed various affidavits for federal crimes related to fraud and labor trafficking.  Throughout the course of my former and present employment I have received extensive training and experience in employing investigative means and methods, collecting evidence, interviewing suspects and witnesses, and apprehending violators of law.

5.    I have completed over 1,000 hours of training at the Federal Law Enforcement Training Center in Glynco, Georgia, where I received comprehensive instruction in criminal investigations, including investigation techniques, service of legal process, determining fact in interviews, analytical processes, and gathering and preserving evidence. During this training, I completed over 100 hours of legal instruction, including extensive training in Title 18 of the United States Code.  Additionally, I have completed over 1,600 hours of training in human intelligence collection with the Department of Defense, covering interviewing, elicitation, debriefing, handling confidential sources, and interrogation.  Prior to my law enforcement career, I served in the United States Army from 2012 through 2020.  Additionally, I hold a bachelor's degree and master's degree in public administration from California State

2

University of Los Angeles, and a doctorate degree in public administration from the University of La Verne in California.

6.    I am currently assigned to the HSI Integrated Operations Group Task Force ("Task Force").  As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations.  As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III.    TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

7.    Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

a.    Every person has a unique set of fingerprints.  I also know that unique identification numbers – including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases, DHS and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE, those unique fingerprint identifiers are

3

associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

8.    Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

9.    On or about February 28, 2026, the ICE Pacific Enforcement Response Center ("PERC") – an ICE center responsible

for vetting and researching the arrests of suspected foreign nationals – received an electronic notification based on defendant's biometric fingerprint information that, on February 27, 2026, he was arrested by the Los Angeles Police Department ("LAPD"), within the Central District of California, for being a felon in possession of a firearm, in violation of California Penal Code Section 29800(a).

10.  Defendant is currently in custody with the Los Angeles County Sheriff's Department ("LASD"). Based on my training and experience, it is essential to act quickly and secure a federal arrest warrant for defendant while he is in a custodial setting because once defendant is released from custody, he may abscond or evade apprehension, particularly in light of his prior removal and unlawful reentry.  Effectuating an arrest while defendant is in custody is materially safer for officers and defendant and presents a significantly lower risk of flight or resistance.  Arrests in a controlled environment also reduce the need for high-risk operations in the community and minimize potential harm to the public.

11.  I compared a unique fingerprint identifier from the arrest referenced above against those contained in the immigration and removal records retained for defendant in DHS indices.  I have determined that these unique fingerprint identifiers are the same and therefore believe that both sets of records reference defendant, a previously removed alien.

12.  On or about March 4, 2026, I conferred with other law enforcement officers, including DHS personnel, and reviewed

5

records associated to defendant's unique fingerprint identifiers that are contained in DHS indices.  I learned the following about defendant's immigration history:

a.    Defendant is a citizen and national of Guatemala.

b.    On or about October 31, 2012, defendant was ordered removed from the United States to Guatemala.  On or about July 11, 2013, defendant was physically removed from the United States to Guatemala.

c.    Since defendant's most recent physical removal from the United States noted above, defendant was initially found in the United States in the County of Los Angeles, within the Central District of California, on November 21, 2024, based on a DHS database notification to the PERC following his arrest by the LAPD on November 21, 2024, for Assault with a Firearm on a Person, in violation of California Penal Code Section 245(a)(2).

d.    There is no record of any application nor permission from the Secretary of Homeland Security or the U.S. Attorney General to re-enter the United States since defendant's most recent removal.  Based upon my training and experience, as well as the training and experience of other law enforcement personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

e.    I reviewed photographs of defendant that were retained in DHS indices from defendant's immigration records.  I also reviewed photographs taken of defendant following his

6

arrest for which the PERC most recently received notification as referenced above.  Based on those reviews, I established a belief that the photographs are of the same person.

13.  Based on my review of a criminal history report for defendant, which is associated to defendant's unique fingerprint identification number(s), I have learned the following:

a.   On or about April 18, 2011, defendant was convicted in Superior Court of California, County of Los Angeles, for the offense of Domestic Battery, a misdemeanor, in violation of California Penal Code Section 243(e)(1), for which defendant was sentenced to two (2) days in jail and 36 months' probation.

b.   On or about October 15, 2012, defendant was convicted in Superior Court of California, County of Los Angeles, for the offense of Grand Theft from Person, a felony, in violation of California Penal Code Section 487(c), for which defendant was sentenced to 262 days in jail and three years' probation.

## V.  CONCLUSION

14.  For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Removal.

7

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 4th day of March
2026.

_____
HONORABLE BRIANNA FULLER MIRCHEFF
UNITED STATES MAGISTRATE JUDGE

8